IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ORION IP, LLC, | § | |
| | § | |
|     *Plaintiff*, | § | Civil Action No. 6:05-cv-322-LED |
| | § | |
| v. | § | **Jury Demanded** |
| | § | |
| MERCEDES-BENZ USA, LLC, | § | |
|   a Delaware Limited | § | |
|   Liability Corporation, et al. | § | |
| | § | |
|     *Defendants.* | § | |

**ORION IP, LLP'S MOTION TO COMPEL HYUNDAI
MOTOR AMERICA TO PRODUCE REQUESTED DOCUMENTS**

After unsuccessfully trying to resolve the present document dispute by way of negotiation, Plaintiff Orion IP, LLC ("Orion") files this Motion to Compel, requesting the Court to order the production of certain documents from defendant Hyundai Motor America, ("Hyundai"). As the Court is aware, the patents in suit are directed to computerized methods of selling products and parts.[1] In this case, Orion has accused the entire Hyundai Website (www.hyundaiusa.com) of infringing the patents in suit.[2] From the very outset of this case, Orion has sought information related to various reports or metrics that indicate, among other things, how many traffic visits Hyundai's Website enjoys, and how effective the Hyundai

---

[1] Orion filed suit against Hyundai on August 30, 2005, alleging, *inter alia*, that Hyundai infringes two Orion patents, U.S. Patent Numbers 5,615,342 ("the '342 patent") and 5,367,627 ("the '627 patent"). The '342 patent, entitled "Electronic Proposal Preparation System," is directed to computerized methods for creating customized product proposals that include a product picture, a product environment picture and text information. The '627 patent, entitled "Computer-Assisted Parts Sales Method," is directed to computerized methods for selling parts. Orion alleges that Hyundai practices directly or indirectly the methods claimed in the '342 and '627 patents through use of its public website and internal, non-public parts system.

[2] In addition Orion has accused the entire www.hyundaidealer.com Website and the entire Hyundai Dealer Communications System in its unopposed P.R. 3-7 Motion filed with this Court on August 25, 2006. Orion is currently awaiting Hyundai's document production with respect to the www.hyundaidealer.com Website and the Hyundai Dealer Communications System and these accused systems and methods are not the subject of this Motion.

Website is in helping Hyundai sell its products. *See*, e.g., discovery letter dated March 8, 2006 *See* Exhibit A. This reporting and metric information is critical to Orion's case or else Orion would not bother the Court with the present Motion to Compel. In support of the motion, Orion shows the following:

I.      **OVERVIEW OF INFORMATION SOUGHT AND IMPORTANCE TO ACTION**

As indicated above, Orion alleges that Hyundai practices directly or indirectly the methods claimed in the '342 and '627 patents through use of its various websites, including, but not limited to, the entirety of the Hyundai Website (www.hyundaiusa.com). One illustrative portion of the Hyundai Website accused of infringement is called "Build Your Own Car System" (or "BYO"). BYO is a portion of the Hyundai Website that allows Hyundai customers to build their own cars by answering questions regarding various features and options available on Hyundai automobiles. While using the BYO portion of the Hyundai Website, Hyundai's customers have the option to obtain a quote on the car they "built" through a service Hyundai calls "Quick Quote."

Another illustrative portion of the Hyundai Website accused of infringement is called HMA/WPC, Hyundai Motor America / Web Parts Catalog, or just WPC. This portion of the Hyundai Website allows dealerships and/or customers to obtain information or purchase parts for Hyundai products through the world wide web. Dealers or customers input customer requirements through the WPC interface. WPC associates part information with customer requirements, contains a shopping cart area where parts can be purchased by customers, and compiles a sales proposal for the customer when the customer completes entering the parts requirements. WPC is an online parts catalog.

On June 6th and 7th, 2006, Orion deposed several Hyundai 30(b)(6) witnesses. During the

depositions, Orion learned that Hyundai tracks certain information relating to customer uses of its websites. Hyundai tracks customer hits on its home page, Build Your Own, and products web pages as well as customer requests for brochures over the internet. *See* Exhibit B, 30(b)(6) Deposition of Laura Flores, pgs. 20-21. Hyundai also tracks the web page a customer visits before linking to the BYO portion of the Hyundai Website, whether BYO customers request a Quick Quote, and whether a customer requesting a Quick Quote ultimately purchases a Hyundai vehicle. Hyundai also compiles data on the information it tracks. Exhibit B, pgs. 22 – 25.

Hyundai's witnesses also testified that Hyundai engages various third party companies to analyze web tracking information on Hyundai's websites. *See* Exhibit B. Hyundai's customer interface and strategy manager, Laura Flores, identified two third party companies:

> 23  Q. Okay. Are there any third parties that provide
> 24  an analysis of the HyundaiUSA web site?
> 25     A. Yes.
>
> 1     Q. Have any of those parties provided any analysis
> 2  of the Build Your Own or Quick Quote features?
> 3     A. Yes.
> 4     Q. All right. Which parties have provided some
> 5  analysis of the Build Your Own?
> 6     A. **Hit Box.**
> 7     Q. All right. Okay. Anybody else?
> 8     A. **Compete**.
> 9     Q. And anybody else?
> 10    A. That's all that I am aware of.
> 11    Q. How about for the Quick Quote feature; would the
> 12  same companies have provided analysis?
> 13    A. **Hit Box.**
> 14    Q. **Hit Box?** Okay.
> 15        And what type of analysis does **Hit Box** --
> 16  what type of analysis has **Hit Box** done on the BYO
> 17  feature?
> 18    A. It lets you know how many hits have hit that
> 19  particular section.

Exhibit B, pp. 49-50 (emphasis added). Deposition of Laura Flores.

Hyundai's application manager for the parts system, Albert M. Kruegel, identified a third

3

website tracking vendor:

    11  Q.  When you programmed your portion of the DCS
    12  system that appears on HyundaiDealer, did you include
    13  the ability to track this type of web information, the
    14  web pages, the time of day, et cetera?
    15    A.  Yes.
    16    Q.  Okay.  For the information you talked about
    17  that's kind of customer specific, the user ID, the part
    18  requested, that information, how is that stored?
    19    A.  In a database.
    20    Q.  And who maintains that database?
    21    A.  e-Business.
    22    Q.  What about the more generic -- or the
    23  information that's common to the entire web site, the
    24  web pages, time of day, that information, where is that
    25  stored?

    1    A.  It's being stored with a service third-party
    2  vendor.  It's a vendor called the **Web Side Story**.  The
    3  data is kept on their servers.
\*
\*
\*
    7  Q.  Have you seen any reports regarding web
    8  statistics of HyundaiUSA.com?
    9    A.  Yes.
    10    Q.  What types of reports have you seen?
    11    A.  I've seen web statistics.
    12    Q.  Including what information?
    13    A.  Pages visited, time of day, browser used, those
    14  type of data.
    15    Q.  Is this -- the report that you saw, was it one
    16  that you'd requested; or how did you come to see this
    17  report?
    18    A.  I accessed at **Web Side Story**.
    19    Q.  Okay.  So, does -- when you say you accessed at
    20  **Web Side Story**, does **Web Side Story** have some web
    21  statistics, reports that are available online regarding
    22  the HyundaiUSA.com site?
    23    A.  Yes.
    24    Q.  And you would access this with some proprietary
    25  password, I take it?

    1    A.  Yes.
    2    Q.  All right.  And you have -- you personally have

```
 3   access to those reports?
 4      A.  I had.
 5      Q.  Do you no longer have access?
 6      A.  I don't know.
 7      Q.  All right.  Would Mr. Rathbun have access to
 8   those reports?
 9      A.  I don't know.
10      Q.  All right.  People in e-Business, would they
11   have access to those reports?
12      A.  Yes.
```

Exhibit C, pp. 78, 80-81 (emphasis added). Deposition of Albert M. Kruegel.

In addition to the tracking information Hyundai admits it collects on its websites and through its third party vendors, Hyundai's 30(b)(6) witness, Steve Rathbun, Parts Technical Information Manager, also testified to generating their own reports regarding traffic crossing its web pages:

```
12      Q.  Sure.
13              I mean, I'm looking at:  Did Hyundai track
14   number of visitors to particular web pages?
15      A.  Yes, they did.
16      Q.  Okay.  And do they track it for every web page,
17   or there are specific web pages?
18      A.  I can't say.
19      Q.  All right.  What group does that tracking?
20      A.  It would be their IT group does that tracking.
21      Q.  Have you seen reports out of IT that show the
22   tracking information?
23      A.  Yes, I have.
24      Q.  Okay.  On the reports out of IT that you've seen
25   tracking information, what is your recollection of other

 1   information that they track?
 2      A.  That's -- I can't say.  I knew they -- I do know
 3   that they do track that; but the other information, I
 4   can't say.
                       *
                       *
                       *
19      Q.  Would there have been a way on the HyundaiUSA
20   site for a consumer to have ordered a part -- entered a
21   part number to order a part and skipped the online
```

5

```
22   catalog?
23      A.  Not to my knowledge.
24      Q.  Would there -- was there tracking of particular
25   pages within the parts catalog for visitors?

1       A.  No.
2       Q.  Was there tracking of how many users of the
3    HyundaiUSA site utilized the online parts catalog?
4       A.  Yes.
```

Exhibit D, pp. 85-87; Deposition of Steve Rathbun.

Additionally, Mr. Kruegel admitted to generating reports regarding usage of Hyundai's online parts catalog, *See* Exhibit C, pp. 36-38, and Ms. Flores viewed monthly reports summarizing the number of hits to various Hyundai web pages. *See* Exhibit B, pp. 23-25.

Shortly after concluding the deposition testimony of the Hyundai's 30(b)(6) witnesses, Orion submitted document requests to Hyundai, requesting, *inter alia*, reports on Hyundai's website traffic including, without limitation, the number of hits on each page of the website, hits to the Build Your Own portion of the Hyundai Website, hits to the Hyundai Website home page, hits to the Hyundai Website that result in brochure requests, and hits to Hyundai Website's product pages. Orion also requested all metrics and reports generated by Hyundai internally relating to its website traffic and all third party reports from Web Side Story, Compete, and Hit Box. Hyundai's 30(b)(6) witnesses have admitted to generating themselves, seeing, or accessing through a third party vendor website most of the documents requested by Orion. To date, Hyundai has not produced a single document, report, or other item responsive to any of Orion's requests related to Web Traffic and results.

The documents relating to Hyundai's website traffic are critical to determining elements of the claims and the economic benefits that redound to Hyundai through use of its web pages. Orion cannot continue this case without production of these documents.

## II.     ORION HAS ATTEMPTED TO DISCOVER RELEVANT INFORMATION REGARDING HYUNDAI'S WEBSITE WITHOUT SUCCESS

Orion has made several efforts to resolve the present dispute without judicial intervention.  Unfortunately, those efforts failed, thus necessitating the present motion.  Even though Orion had requested documents related to Hyundai's website traffic tracking and results tracking both in its March 8, 2006 letter, Exhibit A, and in its 30(b)(6) notice served on May 8, 2006, Exhibit E, Hyundai appeared at the depositions of June 6th and 7th without producing any of the requested documents.  Orion proceeded to demonstrate through the Hyundai witnesses that not only did such documents exist, but that even the witnesses accessed those documents in their work at Hyundai.  On June 27, following the depositions of Hyundai's 30(b)(6) witnesses and based upon the testimony given therein,  Orion requested production of documents and things that it identified as relevant to the issues in the case. *See* Exhibit F.  Hyundai, however, did not respond to Orion's request.  On July 20, Orion sent a follow-up letter, reattaching its June 27th requests. *See* Exhibit G.  Again, Hyundai did not respond.  On July 26, Orion sent an e-mail to Hyundai's lead counsel, Mr. Meyer, reminding him of the requests. *See* Exhibit H.  By August 2, Mr. Meyer still had not responded.  On August 2, Orion requested a meet and confer to discuss outstanding discovery issues, including the June 27th requests. *See* Exhibit I.  For the first time, on August 4, over a month after Orion brought this matter to the attention of Hyundai, Hyundai responded  in part, by objecting to the requests as beyond the scope of the Federal Rules of Civil Procedure.  In particular, Hyundai claimed that it would have to "create" many of the documents requested by Orion and that the reports generated by third party vendors are beyond Hyundai's "possession, custody, or control." *See* Exhibit J.  In response, Orion sent a letter dated August 9th, requesting clarity and assurance from Hyundai that it was not withholding web tracking information because it was held on a third party website, even though that website was readily

accessible to Hyundai personnel. Exhibit K. Hyundai never responded thereby forcing this Motion.

The deposition testimony is clear. All documents requested by Orion existed prior to the taking of the depositions. Hyundai's 30(b)(6) witnesses clearly stated that Hyundai tracks hits on its website and that the tracking information exists in at least two locations: on a database within Hyundai and on one or more third party vendor servers. Hyundai cannot now deny that it has collected web traffic information at Hyundai or through its agents, the third party vendors. Moreover, to the extent that Hyundai believes that the information collected by its third party vendors is beyond Hyundai's "possession, custody or control," Hyundai misconstrues its obligations under the Federal Rules of Civil Procedure. Hyundai's own witnesses testified that the reports were readily accessible to them through password access into the third party's systems.

### III.    ORION IS ENTITLED TO ITS REQUESTED DOCUMENTS

Under the Federal Rules of Civil Procedure, Orion is entitled to discovery of all relevant documents in the "possession, custody or control" of Hyundai. F.R.C.P. 34(a). Hyundai has not objected to the relevance of any of Orion's document requests; only to Hyundai's obligations under the Rules to produce certain documents. As stated by a sister court in the Fifth Circuit,

> Rule 34(a) of the Federal Rules of Civil Procedure states that "any party may serve on any other party a request (1) to produce ... any designated documents ... which are in the possession, custody or control of the party upon whom the request is served." Federal courts have consistently held that documents are deemed to be within the "possession, custody or control" of a party for purposes of Rule 34 if the party has actual possession, custody or control, or ***has the legal right to obtain the documents on demand*** or has the ***practical ability to obtain the documents from a non-party to the action***.

*Estate of J. Edgar Monroe v. Bottle Rock Power Corp.*, 2004 U.S. Dist. LEXIS 5737 (E.D.La 2004) at *32 (citations omitted; emphasis added)

The Eastern District of Texas has adopted this definition of "control." See *Kamatani, et al. vs. BenQ Corporation, et al.*, 2005 U.S. Dist. LEXIS 42762 (E.D.Tex. 2005) at *31-32 (finding "that BenQ had the practical ability, and therefore the requisite control, to gather and produce technical documents from Philips" pursuant to a Network Access Agreement providing BenQ "with access to parts of Philips' intranet and internal network..." where the information resides). *See* Exhibit L.

Here, Hyundai has engaged several third party vendors to track web traffic information on its websites. Hyundai's 30(b)(6) witnesses testified that these third party vendors collect statistics regarding the web traffic crossing Hyundai's websites and provide that information to Hyundai online via a proprietary password. *See* Exhibit C, pp. 80-1. Hyundai's legal right and practical ability to obtain this information obligates it under the Federal Rules of Civil Procedure to produce such information when requested. Orion has properly requested the information. Hyundai cannot deny it has the legal right or practical ability to obtain it. It is simply not credible for Hyundai to assert that it cannot get metrics and reports about Hyundai's Website from a third party it hired, paid and continues to pay solely for the purpose of generating and maintaining such reports for Hyundai.

**IV.    PRAYER**

WHEREFORE, Orion respectfully requests the Court to order Hyundai to produce all responsive documents and tangible things requested by Orion in its document requests dated June 27, 2006, attached herein as Exhibit F. Responsive documents include, but are not limited to, web traffic information collected by Hyundai internally, reports relating to the web traffic

information generated by Hyundai internally, the web traffic information collected by third party vendors, including Web Side Story, Complete, and Hit Box, and all reports accessible by Hyundai through its third party vendors which Hyundai has the legal right to obtain or the practical ability to do so.

DATED:  August 29, 2006        Respectfully submitted,

/s/ Keith A Rutherford
Danny L. Williams, Lead Attorney
TX State Bar No. 21518050
J. Mike Amerson
TX State Bar No. 01150025
James A. Jorgensen
TX State Bar No. 00794060
**WILLIAMS, MORGAN & AMERSON, P.C.**
10333 Richmond, Suite 1100
Houston, Texas 77042
Telephone:  (713)934-7000
Facsimile: (713) 934-7011
E-mail:  danny@wma.law.com
E-mail:  mike@wma.law.com
E-mail:  jjorgensen@wma.law.com

Russell T. Wong
TX State Bar No. 21884235
Keith A. Rutherford
TX State Bar No. 17452000
Wong, Cabello, Lutsch, Rutherford
   & Brucculeri, LLP
20333 SH 249, Suite 600
Houston, TX 77070
Telephone: (832) 446-2400
Facsimile: (832) 446-2424
Email:  rwong@counselip.com
Email:  krutherford@counselip.com

David Pridham
R.I. State Bar No. 6625
Intellectual Property Navigation Group, LLC
207 C North Washington Avenue
Marshall, Texas 75670

        Telephone: (903) 938-7400
        Facsimile: (903) 938-7404
        E-mail: david@ipnav.com

**ATTORNEYS FOR ORION IP, LLC**

## CERTIFICATE OF CONFERENCE

As described more fully in the foregoing motion, particularly in Section B, I hereby certify that we have conferred with Hyundai's counsel, regarding the subject of this motion, but we could not reach an agreement regarding the relief sought.

        /s/ Keith Rutherford

## CERTIFICATE OF SERVICE

The undersigned certifies that Orion IP, LLP's Motion to Compel was filed electronically in compliance with Local Rule CV-5(a) today, August 29, 2006. As such, this notice was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by first class mail today, August 29, 2006.

        /s/ Laurie Schilling