## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **ORION IP, LLC** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:05-CV-322** |
| | § | |
| **MERCEDES-BENZ USA, LLC, et al.** | § | |
| | § | |
| **Defendants** | § | |

## MEMORANDUM OPINION

The Court previously construed the patents-in-suit, U.S. Patent Nos. 5,367,627 (the "'627

patent") and 5,615,342 (the "'342 patent"),  (the "*Staples Markman* opinion") in *Orion IP, LLC v.

Staples, Inc.*[1]  *See* Civil Action No. 2:04-cv-297, Docket No. 307, December 15, 2006.  Orion

accuses Hyundai Motor America, the only remaining defendant in this case, of infringing the '627

and '342 patents.  Hyundai asks the Court to revisit its prior claim construction ruling and presents

arguments on nine previously-construed terms.  Because the Court previously construed the terms

at issue, the Court allowed Hyundai to file the opening brief.   Orion argues in favor of the

constructions the Court issued in the *Staples Markman* opinion.

Hyundai contends the Court should have construed two terms from the '342 patent: the

"storing" step and the "generating" step and disagrees with the Court's construction of "proposal"

as used in the '342 and '627 patents.  As to these three terms, Hyundai does not present new

arguments, but instead adopts the *Staples* Defendants' arguments.  Because Hyundai has not

---

[1] The Court fully incorporates its claim construction opinion in the *Staples* case into this opinion.

presented any new arguments for these terms, the Court adopts the constructions it issued in the *Staples Markman* Order for these terms.

## BACKGROUND

The '627 patent generally describes a computerized system that assists a salesperson in training and with sales of parts corresponding to particularized products. The system includes a data storage device that stores graphic and textual information including specifications, features, and customer benefits. A display apparatus displays portions of this information. A part selection device electronically navigates through part-choice menus based on previously entered information. The invention is said to eliminate the need for salespeople to use more cumbersome paper-based methods of determining the most appropriate part for a customer.

The '342 patent generally describes an electronic system for creating customized product proposals. The system queries a user to determine a customer's needs and interests and then uses stored pictures and text segments to create a customized proposal that appeals to the customer.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d

at 861.  Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent.  *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms.  *Phillips*, 415 F.3d at 1314.  First, a term's context in the asserted claim can be very instructive.  *Id*.  Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent.  *Id*.  Differences among the claim terms can also assist in understanding a term's meaning.  *Id*.  For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation.  *Id*. at 1314-15.

Claims "must be read in view of the specification, of which they are a part."  *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995)).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope.  *Phillips*, 415 F.3d at 1316.  In these situations, the inventor's lexicography governs.  *Id*.  Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone."  *Teleflex, Inc.*, 299 F.3d at 1325.  But, "although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and

examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323.  The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent.  *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862).  Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent.  *Id*. at 1318.  Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court.  *Id*.  Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms."  *Id*.

To rule "on a claim of patent indefiniteness, a court must determine whether one skilled in the art would understand what is claimed when the claim is read in light of the specification." *Bancorp. Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1372 (Fed. Cir. 204).  To respect a patent's presumption of validity, *see* 35 U.S.C. § 282, a court should hold a claim indefinite only after reasonable efforts at construction prove futile.  *Exxon Research*, 265 F.3d at 1375.  A claim is not indefinite merely because it poses a difficult issue of claim construction.  *Bancorp Servs.*, 359

4

F.3d at 1371.  "Only claims not amenable to construction or insolubly ambiguous are indefinite" and thus invalid.  *Datamize*, 417 F.3d at 1347 (internal quotes omitted).  If the claim's meaning is discernable, "even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree," the claim is "sufficiently clear to avoid invalidity on indefiniteness grounds."  *Exxon Research*, 265 F.3d at 1375.  A party must show invalidity for indefiniteness by clear and convincing evidence, and close questions of indefiniteness "are properly resolved in favor of the patentee."  *Datamize*, 417 F.3d at 1348; *Exxon Research*, 265 F.3d at 1380.

## HYUNDAI'S GENERAL ARGUMENTS ABOUT THE *STAPLES MARKMAN* ORDER

Before addressing the parties' substantive arguments on disputed terms, the Court will address Huyndai's arguments that the Court's previous determination that certain terms do not require further construction is error.

### Which terms require construction

Hyundai argues that in the *Staples Markman* Order, the Court "declined" to construe 28 of 29 terms submitted by the *Staples* Defendants and disputed by Orion.  Hyundai urges that this is error "because the very existence of the parties' fierce dispute over the meaning of such terms, coupled with the Court's decision not to articulate what it considers the ordinary meaning to be, leaves the jury to formulate claim constructions on its own without regard to the canons of claim construction while providing nothing for the Federal Circuit to review."  *See Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004)("[T]he trial court in a patent case must at minimum take steps to assure that the jury understands that it is not free to consider its own meanings for disputed claim terms . . . ."); *Toro Co. v. Deere & Co.*, 355 F.3d 1313, 1319-20 (Fed. Cir. 2004); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 791 (Fed. Cir. 1995) (remanding for failure

to construe the term "rib").

Hyundai mischaracterizes the Court's *Staples Markman* Order.  In that Order, the Court addressed each of the disputed terms and the parties' respective arguments.  The Court then resolved the parties' disputes with respect to each disputed term.  For example, the *Staples* Defendants urged that the term "customer" should be construed to mean that "[t]he customer is not the person using the computer to customize the proposal for the customer." *Staples Markman* Order at 6.  The Court rejected that argument.  Having resolved that dispute, there was no longer any disagreement between the parties over the meaning of "customer," and accordingly the Court held that "customer" did not require any further construction.  *Id.* at 7.  The same is true for the remaining terms.

"Only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999); *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("The Markman decisions do not hold that the trial judge must repeat or restate every claim term in order to comply with the ruling that claim construction is for the court. Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").

*Sulzer*, *Graco*, and *Toro* are not to the contrary.  Here, the Court has resolved all of the parties' disputes in the *Staples Markman* Order and this Order.  The Court has not "declined" to construe claims or "declined" to resolve the parties' disputes.

**Construction Post-*Phillips***

Hyundai argues that post-*Phillips* cases, which the Court lacked the benefit of when it issued

6

the *Staples Markman* Order, "hold that it is proper to construe patent terms more narrowly than their plain and ordinary meaning where that construction derives from the context of the intrinsic record, even without an express disclaimer of scope, and particularly when, as here, a disclaimer is present in either the prosecution history or the specification."  Hyundai's Opening Brief at 1; *see Nystrom v. TREX Co.*, 424 F.3d 1136, 1138 (Fed. Cir. 2005), cert. denied, 126 S. Ct. 1654, (2006); *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1315 (Fed. Cir. 2006); *On Demand Machine Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331,1339-40 (Fed. Cir. 2006).

Neither *Old Town Canoe* nor *On Demand* alters the rationale of *Phillips*.  In *Phillips*, the Federal Circuit stressed that the meaning of a claim term is the meaning understood by a person of ordinary skill in the art in question at the time of the invention, and that a person of ordinary skill in the art views the claim term in the light of the entire intrinsic record, including the specification and prosecution history.  *Phillips*, 415 F.3d at 1313; *see e.g., Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366–67 (Fed. Cir. 2005)("The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim interpretation. Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification.  Thus, this court weighs the district court's claim interpretation by these standards." (quoting *Phillips*, 415 F.3d at 1312)).

Hyundai further contends that "[t]hese post-*Phillips* cases clarify the en banc *Phillips* rule construing claim terms in a manner consistent with the context of the intrinsic record unless there is support in the intrinsic record for a broader construction."  Hyundai's Opening Brief at 8 (citing *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1379-80 (Fed. Cir. 2006);

7

*MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344, 1351-52 (Fed. Cir. 2005); *Tap Pharm. Prods., Inc. v. Owl Pharms., L.L.C.*, 419 F.3d 1346, 1353-54 (Fed. Cir. 2005); *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1343-44 (Fed. Cir. 2005)).  These cases do not stand for this proposition—or at least not as Hyundai posits its argument.   Certainly claims must be construed "in a manner consistent with the context of the intrinsic record," however the search is not for "a broader construction" or a "narrower construction," but rather for how one of ordinary skill in the art would construe a claim term or phrase in light of the intrinsic record, including the specification and prosecution history, and, in appropriate cases, in light of extrinsic evidence as well.

Hyundai argues the post-*Phillips* cases contrast with pre-*Phillips* cases that suggested terms should be given their broadest construction absent an express disclaimer of scope.  Hyundai further argues this Court applied only the pre-*Phillips* cases in its *Staples Markman* opinion, and the claim terms were not given meanings consistent with their scope as used in the specification and prosecution history, because the Court found no express disclaimer of scope.  This Court, however, has not constrained its analysis to pre-*Phillips* decisions, and, indeed, has considered Federal Circuit decisions up to the time this opinion was prepared.  Hyundai has cited no case, nor is the Court aware of any, that renders the Court's current or prior analysis erroneous.

The *Phillips* court reiterated that "although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments." 415 F.3d at 1323 (citing the pre-*Phillips* cases Hyundai argues against applying). "In particular, we have expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment."  *Id*. The court explained "[t]hat is not just because section 112 of the Patent Act requires that the claims

themselves set forth the limits of the patent grant, but also because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments." *Id*.

> The *Phillips* court further explained that

> [t]o avoid importing limitations from the specification into the claims, it is important to keep in mind that the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so.  One of the best ways to teach a person of ordinary skill in the art how to make and use the invention is to provide an example of how to practice the invention in a particular case. Much of the time, upon reading the specification in that context, it will become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive.  The manner in which the patentee uses a term within the specification and claims usually will make the distinction apparent.

415 F.3d at 1323 (citations omitted).

In the *Staples Markman* opinion, and in this opinion, the Court has followed the analysis articulated in *Phillips* by beginning the claim construction analysis with the words of the claim, giving the words of the claim "their ordinary and customary meaning," namely the meaning that a "term would have to a person of ordinary skill in the art in question at the time of the invention," recognizing that the person of ordinary skill in the art views the claim term in the light of the entire intrinsic record, and therefore reading the claims in view of the specification, of which they are a part, as well as the prosecution history.  *See Phillips*, 415 F.3d at 1312–13.

## '342 PATENT

*Selecting a particular product picture in response to at least one of the customer answers; selecting a particular product environment picture in response to at least one of the customer answers; selecting a particular text segment in response to at least one of the customer answers* and *automatically selecting, in response to at least one of the customer answers, a product image, a product environment image and a text segment*

The *Staples* Defendants urged the Court to construe these terms to mean: "Separately selecting one of multiple product pictures; separately selecting one of multiple product environment pictures; and separately selecting one of multiple text segments.   These three selections are performed separately such that one of multiple product environment pictures could be selected for the separately selected product picture.  Each of the separate selections must be based on a customer answer to at least one of the questions."   The Court resolved that dispute by concluding that "[n]either claim 1 nor claim 11 requires selecting a product picture, product environment picture, and a text segment based on separate answers."  *Staples Markman* opinion at 24.  Having resolved that dispute, the Court concluded that no further construction was necessary, noting that "the claim language is sufficiently clear that a particular product picture, a particular product environment picture, and a particular text segment are selected in three separate steps."  *Id*.  It is clear, as the Court concluded in the *Staples Markman* opinion, that both claims 1 and 11 require selecting at least three separate items, namely (1) a product picture, (2) a product environment picture, and (3) a text segment.  Hyundai says that it agrees with that construction.

Although Hyundai now contends that these steps in claims 1 and 11 should be construed to mean "selecting a product picture <u>that is matched to</u> the content of at least one of the customer answers; selecting a product environment picture that is matched to the content of at least one of the customer answers; and selecting a text segment that is matched to the content of at least one of the customer answers," it is not readily apparent how that construction adds any needed clarification— especially since "matching" does not appear in any of the claims or the specification.  After all, as Hyundai notes, the claims clearly call for "selecting . . . in response to at least one of the customer's answers."  Nor is it apparent why one of ordinary skill in the art would construe the claims as

10

Hyundai suggests.

Nevertheless, turning to Hyundai's first argument that the "context" of the specification supports "matching," Hyundai points to the following in the "summary" portion of the specification:

> Based upon the customer's answers to the queries, the system links product pictures, environment pictures, and textual descriptions together in a customized proposal. . . .  The customized proposal, therefore, contains pictures, textual descriptions, and pricing information that is all of interest to and relevant to a specific customer, since all of the pictures and text were linked together based upon the customer's answers.

'342 patent, col. 2:20-30, and urges that "[t]his statement is not merely a description of a preferred embodiment or an illustrative example," but "is Johnson's summary of how his invention operates to provide a novel solution to the problem of generating customized brochures."  Hyundai Opening Brief at 11.  Even if that is taken as true, "match" is not used here or elsewhere in the specification. "Although this description does not literally use the word 'match,'" Hyundai nevertheless contends that "it is apparent that anything less than 'matching' will not allow the system to select 'pictures, textual descriptions, and pricing information that is all of interest to and relevant to a specific customer.'"  *Id.*  In its Reply, Hyundai further argues that "[t]he only way that all of the selected information can [be] assured to be relevant to a specific customer is if each of the those selections are matched to at least one of the customer['s] answers."  Hyundai Reply Brief at 3.

Although Hyundai does not explain what it intends to convey by "match," Hyundai is simply wrong in suggesting that "match" is necessary to achieve the result stated in the specification.  The specification explains that "[b]ased upon the customer's answers to the queries," the system links product pictures, environment pictures, and textual descriptions together in a customized proposal. '342 patent, col. 2:20.  Similarly, the claims call for "selecting a particular product picture [etc.] in

response to at least one of the customer answers." That is sufficient to achieve the result stated in the specification.

Hyundai secondly relies on the prosecution history of a parent application to the '342 patent, namely application Serial No. 07/878,602, filed May 5, 1992, now U.S. Pat. No. 5,493,490. In an Office action dated May 22, 1995, the PTO rejected application claim 30 (and other claims) as having been obvious over a UK patent to Donald et al. and U.S. Patent No. 4,775,935 to Yourick. In the rejection, the examiner reasoned that Donald et al. "fails to expressly disclose presenting questions to users and receiving answers in order to associate the answers with stored images or text portions. Instead, Donald's system is drawn to generating images or other information in response to direct user entries on a keyboard or user selections from a menu-driven software program." However, the examiner reasoned, "question and answer query systems for presenting a product for selection are known in the art. Namely, Yourick discloses a multimode video merchandising system with a variable and adoptive product sequence presentation order, comprising two levels of an inductive learning process based upon user preferences and selections. In particular, Yourick's system queries the user for preferences by asking questions and makes suggestions in response to selected answers in order to present a product most suited to the needs and desires of the user. It would have been obvious to one of ordinary skill in the art . . . to apply the teaching of Yourick within the system disclosed by Donald with the motivation of presenting items which most likely appeal to the user." May 22, 1995 Office Action, Application No. 07/878/602, at 4 (citations omitted).

The applicant amended claim 30:

d) output means, coupled to the receive means and the processing

> means, for receiving the [gathered] <u>customer-specific vehicle information, for formatting the customer-specific vehicle information according to criteria related to a layout of the customized proposal</u>, and for compiling the [gathered] <u>formatted customer-specific</u> vehicle information into the customized proposal.

June 19, 1995 Amendment and Response (underlining indicating additions and brackets indicating deletions).  The applicant argued, *inter alia*:

> Yourick, furthermore, does not associate a user's responses with product pictures, environment and text. Yourick uses inductive learning techniques in order to best "guess" about a customer's desired features of a product.  <u>The present invention provides advantages over this technique by querying the customer about his or her desired product features and uses in order to "match" the answer with customer-specific information</u>.  This can result in a more persuasive proposal, because the present invention is not simply making "best guesses," but, rather, is obtaining information specifying the customer's desired product features and uses.

*Id.* at 4 (emphasis added).  The emphasized portion is what Hyundai relies on urging that the "selecting" steps require "matching."  Hyundai argues that "Johnson distinguished his invention by stating it did not need to 'guess,' because it 'matched' a customer's answers with customer-specific information."  Hyundai Opening Brief at 13.  This was the sole use of "match" in the prosecution history of the parent.

Two interviews later, it appears that the examiner suggested "incorporating the feature of <u>selecting</u> a particular vehicle picture, environment picture, or text segment <u>in response</u> to one of the answers specified by the customer in the input means . . . ."  July 24, 1995 Telephone Interview.

The applicant then amended claim 30 (in relevant part) as follows:

c) processing means for gathering [customer specific] vehicle information for use in generating the customized proposal, comprising:
  i) means for electronically <u>selecting a particular vehicle picture in response to at least one of the answers</u> [associating at least one of the answers with a particular vehicle picture];
  ii) means for electronically <u>selecting a particular vehicle environment picture</u>

> <u>in response to at least one of the answers</u> [associating at least one of the
> answers with a particular vehicle environmental picture]; and
> iii) means for electronically <u>selecting a particular text segment in response to</u>
> <u>at least one of the answers</u> [associating at least one of the answers with a
> particular text segment]; and
> d) output means, coupled to the receive means and the processing means, for
> receiving the <u>gathered</u> [customer-specific] vehicle information [, for formatting the
> customer-specific vehicle information according to criteria related to a layout of the
> customized proposal,] and for compiling the <u>gathered</u> [formatted customer-specific]
> vehicle information into the customized proposal.

The applicant argued that "[i]n the present invention, the customer's answers are used to determine

the vehicle pictures, vehicle environment pictures, and text segments.  This feature is not present in

the prior art and in particular the Donald *et al*. and Yourick references." July 24, 1995 Supplemental

Amendment & Interview Summary, Application No. 07/878,602, at 3.

All of the foregoing occurred during prosecution of what is now the '490 patent, parent to

the '342 patent-in-suit.  Hyundai argues that despite no reference to "match" or "matching" during

the prosecution of the '342 patent, the statements made during prosecution of the parent application

apply as well to the application maturing into the '342 patent.

Accepting Hyundai's argument that the prosecution history of the '490 patent applies equally

to the '342 patent, that does not require (or counsel in favor of) Hyundai's proposed construction.

First, Hyundai's proposed construction essentially rewrites the asserted claims to substitute "that is

matched to the content of" in place of "in response to."  As the foregoing prosecution history makes

clear, though, the applicant (and the examiner) chose to use the words of the present claims—not

"matched" or the phrase "that is matched to the content of," as now Hyundai suggests.

Second, the applicant in the portion of the prosecution history that Hyundai relies on, was

not distinguishing "guessing" from "matching," but rather was distinguishing Yourick's inductive

learning techniques which did not associate a user's responses with product pictures, environment and text.  That response provides no rationale or basis for construing "in response to" as "that is matched to the content of" in the issued claims, or otherwise construing the issued claims as Hyundai urges.

Using the word "match" in that response provides no sufficient reason, by itself or in the context in which it was made, for concluding that one of ordinary skill in the art would construe "selecting a . . . <u>in response to</u> at least one of the customer answers" as "selecting a . . . <u>that is matched to the content of</u> at least one of the customer answers."  That is especially so in light of the subsequent change in claim language, and subsequent arguments in which "match" is never used.  Nor has Hyundai shown that the actual claim language somehow fails to define the actual invention disclosed in the '342 patent and that its proposed construction is necessary to do so.

The point is, and the undisputed facts are, the applicant used the term "match" exactly once throughout the entire prosecution of the '490 and '342 patents and presented no claim nor any further argument using "match."  That is not to suggest that an applicant must make the same argument more than once in order to be subjected to a form of argument-based estoppel.  Nevertheless, the "context" of the prosecution history simply does not support Hyundai's argument.

Rather, at the suggestion of the examiner, the applicant chose to use "means for electronically <u>selecting a particular vehicle picture in response to at least one of the answers</u>," "means for electronically <u>selecting a particular vehicle environment picture in response to at least one of the answers</u>," and "means for electronically <u>selecting a particular text segment in response to at least one of the answers</u>" in the parent application maturing into the '490 patent, and similar language in the application maturing into the '342 patent.  The applicant thereafter argued in prosecuting the '490

patent that "[i]n the present invention, the customer's answers are used to determine the vehicle pictures, vehicle environment pictures, and text segments.  This feature is not present in the prior art and in particular the Donald *et al*. and Yourick references."  July 24, 1995 Supplemental Amendment & Interview Summary, Application No. 07/878,602, at 3.  The applicant similarly argued in prosecuting the '342 patent that "[t]he present application is directed to a computerized system which utilizes a customer's answers to computer-generated questions to select stored pictures of products, product-related environments and text segments for incorporation into a customized proposal. . . . The claimed system selects a particular product picture, a particular product environment picture, and a particular text segment 'in response to at least one of the customer answers.'  The selected pictures and text segment are used to generate 'a customized proposal for the customer.'"  September 24, 1996 Amendment & Request for Reconsideration, Application No. 08/596,575, at 3.

Under the circumstances, Hyundai has simply provided no persuasive reason why one of ordinary skill in the art, reviewing the specification and prosecution history of the '342 patent, as well as the parent '490 patent, would conclude that "selecting a particular product picture in response to at least one of the customer answers," "selecting a particular product environment picture in response to at least one of the customer answers," and "selecting a particular text segment in response to at least one of the customer answers" in claim 1, and "automatically selecting, in response to at least one of the customer answers, a product image, a product environment image and a text segment" in claim 11, meant "selecting a product picture that is matched to the content of at least one of the customer answers; selecting a product environment picture that is matched to the content of at least one of the customer answers; and selecting a text segment that is matched to the

16

content of at least one of the customer answers," as Hyundai proposes.

Accordingly, the Court rejects Hyundai's proposed construction.  There being no other dispute about the terms' meanings, no further construction is necessary.

*Customized Proposal*

The *Staples* parties agreed that "customized proposal" did not require additional construction. Since the Court had already construed "proposal" as "information intended for conveyance to a potential customer," the Court agreed that "customized proposal" was not a term with special meaning in the art or in this patent.  The Court reasoned that it is an everyday term that the jury will be sufficiently familiar with.

Hyundai argues that "customized proposal" was given a special meaning in the specification and during prosecution and should now be construed as "the utilization of a customer's answers to questions to select product pictures, product environment pictures, and text segments and compile this information for conveyance to a potential customer."

Hyundai's proposed construction is unnecessary as it merely restates what is elsewhere in the claim.  Accordingly, for the reasons given in its *Staples* opinion, the Court construes "proposal" as "information intended for conveyance to a potential customer," and "customized proposal" does not require further construction.

*User*

Hyundai contends "user" should be construed to mean "one who deals with customers."  In the *Staples* case, the Court rejected the distinction between user and customer and found the term did not require construction because the patent uses this term according to its plain lay meaning. Accordingly, the Court rejects Hyundai's proposed construction and construes the term according

17

to its ordinary meaning.

*Plurality of questions [and answers] relating to features and uses*[2]

Hyundai argues "features and uses" should be construed as a conjunctive phrase—i.e., the questions (or answers) must relate to both features and uses.  Hyundai incorrectly asserts that this issue was not before the Court in the *Staples* case.  The *Staples* Defendants took the same position, which the Court rejected and instead construed the term as a disjunctive—i.e., the questions (or answers) must relate to either features or uses.

Hyundai argues that the applicant distinguished Donald and Yourick during prosecution on the basis that the invention queries customers about features and uses.  *See* June 19, 1995 Amendment and Response for Application No. 07/878,602 at 4.  However, reading this response in context shows that the applicant distinguished Donald and Yourick because the present invention relates the customer's answers to customer-specific information rather than using an inductive learning technique that did not associate a user's responses with pictures and text.  *Id.*

Hyundai also argues that its construction is necessary to distinguish the patent from the prior art.  First, construing claims to preserve validity is a last resort and is only used when claims remain ambiguous after applying all other claim construction tools.  *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1332 (Fed. Cir. 2007).  Second, Hyundai has not shown that its construction would preserve validity over Montagna because Hyundai has not shown that Montagna includes all of the limitations of the claims at issue.  Finally, Hyundai has not shown that the term remains

---

[2] This group of terms includes "plurality of questions relating to features and uses of the products" and "a plurality of customer answers to the questions, and the answers specifying a customers desired product features and uses" in claim 1 and "a plurality of questions related to at least one of a desired feature and desired use of the product" and "customer answers of the customer to the plurality of questions" in claim 11.

ambiguous after all other construction tools have been utilized.   Accordingly, the Court rejects Hyundai's proposed construction.   As Hyundai's proposed construction only addresses the conjunctive-disjunctive issue, further construction is unnecessary.

*Questions*

The *Staples* Defendants contended "questions" should be construed to mean: "More than one inquiry that requests an answer and ends with a question mark.   Commands and statements are not questions.   Menus presenting options are not questions.   Words or phrases not in question form that are selected with a cursor or selection device are not questions."   Hyundai now argues a simplified version of the *Staples* Defendants' proposed construction—"queries that request answers instead of user selections from a menu."

Hyundai also argues that during prosecution, the applicant distinguished his invention from prior art that utilized "menus" on the basis that his invention utilized "questions."   The Court previously examined the prosecution history in the *Staples Markman* opinion and found "there is nothing in the prosecution history indicating that the Applicant disclaimed a broader meaning of 'questions.'   Further, there is no reason within the patent to believe the Applicant used "questions" in any manner besides its ordinary meaning.   Accordingly, there is no need to construe the term, much less to stringently limit the meaning of 'questions' as Defendants would like."   *See Staples Markman* opinion, at 9–11.

Hyundai also argues that "menus" and "questions" are used in the specification to refer to different things.   *See* '342 Patent, cols. 15:14–39; 17:54–18:7; 20:22–24; 24:53–25:19; 27:22-56; 29:60–30:32; 32:37–33:5; 37:25–57.   While the specification does refer to both "menus" and "questions," it also refers to menus or menu-like interfaces as questions.   *See* '342 Patent, cols.

19

25:15–19 ("The predetermined questions allow the user to select one of a list of predetermined answers that correspond to the trade-in product of the customer who is to receive the proposal."); 30:28–32 ("The predetermined questions allow the user to select one of a list of predetermined answers that correspond to the financing of a product configuration that is of particular interest to the customer who is to receive the proposal."); 33:1–5 ("The predetermined questions allow the user to select one of a list of predetermined answers that correspond to the life cycle cost relating to a product configuration that is of particular interest to the customer who is to receive the proposal."). Thus, the specification does not preclude menus as types of questions.

Since there is evidence that the applicant did not limit the meaning of "questions" to exclude menus, the Court rejects Hyundai's proposed construction.  As there is no other dispute about the term's meaning, the term does not require further construction.

<u>Uses</u>

Hyundai argues "uses" should be construed as "environments."  In the *Staples Markman*, the Court rejected the *Staples* Defendants' similar proposed construction based on the specification.  In *Staples*, the Court determined that "uses" is used according to its ordinary meaning and no other construction was necessary.  Hyundai makes the same specification-based arguments here, and they are equally unpersuasive.

Hyundai also argues the applicant acted as his own lexicographer during prosecution and used "uses" to mean "environments."  Specifically, Hyundai cites to an amendment in the prosecution history where the applicant replaced "environments of product use" and "distinctive environments in which the product may be used" with "uses."  Hyundai argues these changes were not meant to change the meaning of the claims because the applicant made no statement that he

intended to change the meaning of the claims and because the applicant characterized the amendments as corrections of "minor technical matters."  *See* January 24, 1999 Amendment and Interview Summary, Application No. 07/878,602.

However, the applicant did not amend all of the claims in this manner.  The applicant amended then claim 2 in other ways, but did not change "environments" to "uses": ". . . related to distinctive environments in which the [product] <u>vehicle</u> may be used . . . ."  *Id*. at 1.  As issued, claim 2 also uses the phrase "distinctive environments in which the products may be used."  Thus, it is far from clear that the applicant acted as his own lexicographer to exclusively define "use" as synonymous with "environments."  Accordingly, the Court rejects Hyundai's proposed construction.

*Product pictures [images]* and *Product environment pictures [images]*[3]

In the *Staples* case, the Court determined these terms did not require further construction after resolving the parties' disputes about the terms.  Hyundai asks the Court to clarify that the "'product pictures' and 'product environment pictures' must be separate items in terms of content."  Hyundai argues such clarification is necessary to prevent juror confusion and because, as presently construed, the '342 patent reads on intrinsic prior art.[4]  Specifically, Hyundai wants the Court to construe "product pictures" as "pictures of products that are separate from the product environment pictures" and "product environment pictures" as "pictures of surroundings in which the product may be used that are separate from the product pictures."

The *Staples* Defendants urged the Court to construe "product pictures" as "More than one

---

[3] "Product images" and "product environment images" are used in Claim 11.

[4] As previously discussed, the Court rejects this argument because "[c]onstruction of the claims here is not so difficult a problem as to require resort to the validity maxim."  *MBO Labs.*, 474 F.3d at 1332.

picture, each of which is of a product and does not include a product environment picture or text segment.  Each product picture must be capable of being placed within more than one product environment picture."  They urged the Court to construe "product environment pictures" as "More than one picture, each of which is an environment that will serve as a background within which a product picture is placed and which does not include either a product picture or text segment.  Each product environment picture must be capable of serving as a background for more than one product picture."  The *Staples* Defendants argued that these items must be stored and selected separately and distinctly.

Thus, Hyundai reurges the *Staples* Defendants' position that the product pictures [images] and product environment pictures [images] must be separate, i.e., they cannot contain the same content.  Based on the specification, the Court previously rejected such an exclusivity requirement.  *See Staples Markman* opinion, at 20 ("An exclusivity limitation is not required by the claims, the specification, or the disclosed invention.").  Hyundai also argues that the prosecution history supports such an exclusivity requirement.  However, the sections from the prosecution history that Hyundai relies on are taken out of context.  In proper context, the applicant first acknowledged that Donald mentions combining composite images and then distinguished Donald for not disclosing gathering and formatting customer-specific information.  *See* June 19, 1995 Amendment and Response, 7,878,602 application, at 3.  The applicant then distinguished Yourick for failing to combine various pieces of customer-specific information and format the information for a particular layout.  *Id*. at 4.  Finally, the applicant distinguished Yourick's "best guess" technique from the present invention's method of obtaining information specifying the customer's desired product features and uses.  *Id*.  Thus, taken in context, the applicant did not disclaim the use of composite

22

images.

Accordingly, the Court's rejects Hyundai's exclusivity requirement and its proposed constructions.

## '627 PATENT

*Receiving information identifying a customer's parts requirements for the equipment*

The *Staples* Defendants contended this term should be construed as "Receiving information identifying the parts required by the customer for the equipment.  Identification of the equipment alone is not sufficient because it is not enough to identify the parts which the customer requires for that equipment."  Orion contended that claim 1's structure requires no more than an "identification of the equipment," which was the opposite of the *Staples* Defendants' construction.  The Court agreed and determined the term did not require further construction.

Hyundai argues the term should be construed to mean "receiving information identifying a customer's parts requirements and at least a portion of a manufacturer's part number for the equipment" in order to preserve the claim's validity over prior art.  Hyundai argues is that "Nagano's teaching <u>arguably</u> invalidates" claim 1.  Hyundai "cannot avoid a full-blown validity analysis by raising the specter of invalidity during the claim construction phase."  *See Rhine v. Casio, Inc.*, 183 F.3d 1342, 1346 (Fed. Cir. 1999).  Whether a claim is valid or not depends on the claim as a whole, not simply one limitation.  Whether Nagano teaches "selection of parts in response to an identification of only the equipment owned" or not says nothing about the validity of the claim as a whole.

Nor has Hyundai shown that the claim language or specification requires receiving information at least a portion of a manufacturer's part number for the equipment.  In the *Staples*

*Markman* opinion, the Court rejected the contention that the limitation should be construed to include that "[i]dentification of the equipment alone is not sufficient . . . ." Having already resolved that dispute, no further construction is necessary. Thus, the Court rejects Hyundai's proposed construction and determines the claim language does not require further construction.

*Electronically specifying information identifying a plurality of parts and specifications for the parts*

The *Staples* Defendants originally submitted this term for construction, but they withdrew the term during the hearing. Orion contended the term did not, and does not, require construction. Thus, the Court did not construe the term.

Hyundai argues that the claim term "electronically specifying information identifying a plurality of parts and specifications for the parts" in the '627 patent is "undefinable, insolubly ambiguous, and not amenable to construction." Hyundai argues that "electronically specifying" (1) lacks an ordinary meaning in the art, as evidenced by the inventor's testimony, (2) does not appear in the text of the specification, and (3) could cover a number of different functions disclosed in the specification. The ultimate question, however, is "whether a person experienced in the field of the invention would understand the scope of the claim when read in light of the specification." That is satisfied here.

The specification explains that "computer system 100 incorporates a display apparatus 102, a data storage device 104, a part selection device 106 and a user interface mechanism 108." '627 patent, col. 6:19–21. The specification further explains, in conjunction with Fig. 1A that "data storage device 104 electronically stores both graphic and textual part-related information 112 including specifications 124, features 132 and customer benefits 134. The specifications 124 may further include a manufacturers part number 126, a particular part's attributes 128 and a product

24

description 130." '627 patent, col. 6:30–35.

The *Staples* Defendants pointed out that the prosecution history indicated that method claim 1 of the '627 patent was in some respects similar to apparatus claim 1 of parent U.S. Patent No. 5,283,865.  Claim 1 of the '865 patent calls for "storage means for electronically specifying information identifying a plurality of parts and specifications for parts."  According to the *Staples* Defendants, "claim 1 in the parent patent made clear that it was the 'storage means' that provided the 'electronically specifying' function."  The *Staples* Defendants suggested that the specification disclosed a "data storage device" that "might be" the "storage means" of claim 1 of the '865 patent, but supposed that "the idea of a storage device 'specifying' something . . . seems different from the idea of a storage device "stor[ing]' something . . . ," and suggested that the difference was "not clear."

The *Staples* Defendants, although also contending that "electronically specifying" rendered the claim indefinite, proposed construing the limitation to mean "electronically providing information identifying a plurality of parts and specifications for parts."  The *Staples* Defendants arrived at that conclusion based on the foregoing prosecution history and dictionary definitions for "specify."  The *Staples* Defendants, however, withdrew that term from the list of disputed terms during the prior *Markman* hearing, and the Court, as a result, concluded that because there was no longer any dispute among the parties, the term did not require construction.

Hyundai now argues that, in the progression of the claim language from the parent application (now patent) to the current patent, deleting "storage means for" rendered the scope of claim 1 of the '627 patent "indefinite because the functional language used to define the purpose of a structural element does not translate into a comprehensible, free-standing step in a method claim."

25

Hyundai argues that "[t]he term 'electronically specifying' loses all clarity of definition when it is divorced from the term 'storage means for' and arguably remains in Claim 1 of the '627 patent due to careless claim-drafting."  Hyundai Opening Brief at 42.

Hyundai acknowledges that the *Staples* Defendants had proposed that the disputed limitation meant "electronically specifying information identifying a plurality of parts and specifications for parts," but, apparently, does not agree with that proposed construction.  Specifically, Hyundai argues that the problem with the *Staples* Defendants' proposed construction is that the subject limitation could, according to Hyundai, refer to a number of other functions disclosed in the specification.  In particular, Hyundai argues that "[b]ecause the step of 'electronically specifying information identifying a plurality of parts . . .' falls between the steps of 'receiving information' and 'associating at least one of the parts . . . ,' it is unclear exactly what is being electronically specified, how such specification is performed, and why it is being performed."  Hyundai Opening Brief at 41.

Hyundai's argument is based on the faulty premise that step b) must come after step a) and before step c).  "Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1343 (Fed. Cir. 2001).  "[S]uch a result can ensue when the method steps implicitly require that they be performed in the order written." *Id*.  The Federal Circuit has adopted "a two-part test for determining if the steps of a method claim that do not otherwise recite an order, must nonetheless be performed in the order in which they are written." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369-70 (Fed. Cir. 2003).  First, the court "look[s] to the claim language to determine if, as a matter of logic or grammar, they must be performed in the order written." *Id*.  If not, the court secondly "look[s] to the rest of the specification to determine whether it 'directly or implicitly requires such

a narrow construction.'" *Id*.  "If not, the sequence in which such steps are written is not a requirement."  *Id*.

In the context of claim 1 of the '627 patent nothing in terms of logic or grammar requires that step b) be performed between steps a) and c) or after step a).  Further, nothing in the specification directly or implicitly requires the same.  Although step c) refers to "the plurality of parts" referenced in step b) and "customer's requirements" referenced in step a), and therefore suggests that step c) occur after steps a) and b), there is no similar language in step b) requiring performance of that step <u>after</u> step a).  As noted above, the *Staples* Defendants drew a parallel between claim 1 of the '865 patent and claim 1 of the '627 patent, and noted that the "storage means" may refer to the "data storage device" disclosed in the specification.  The specification suggests that parts-related information may be stored in the "data storage device" before the step of "receiving information" in step a).  *See e.g.,* the abstract.

Hyundai also contends that the deposition of the sole inventor of the '627 patent indicated that he was not aware of an ordinary meaning for "electronically specifying."  However, Hyundai overlooks his immediately preceding testimony:

> Q.  What does "electronically specify" mean, sir?
> . . . .
> A.   Electronically specify information.   So the key words you are asking is electronically specify?
> Q.  Yes.  What does that mean?
> . . . .
> A.  Electronic format.
> Q.  But what is an example of an electronic format?
> . . . .
> A.  It is not on paper.

Dep. Jerome Johnson, July 1, 2005, p. 219:10-24.  Thus, although Mr. Johnson may not have been

aware of an "ordinary meaning" for "electronically specify," he knew what the term meant.

Hyundai argues that the claim "is unclear exactly what is being electronically specified, how such specification is performed, and why it is being performed," but those things are not required by § 112(2). The claims are not required to "'describe' the invention, which is the role of the disclosure portion of the specification, not the role of the claims,"and § 112's 'full, clear, concise, and exact' requirement applies only to the disclosure portion of the specification, not to the claims. *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1575 Cir. 1986). And, in actuality, contrary to Hyundai's argument, the claim actually <u>does</u> set out "what is being electronically specified"—namely, "information identifying a plurality of parts and specifications for the parts."

Moreover, contrary to Hyundai's further arguments, "electronically specifying information identifying a plurality of parts and specifications for the parts" is not analogous to "aesthetically pleasing look and feel" found to have rendered the claims indefinite in *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342 (Fed Cir. 2005). The problem in *Datamize* was that "'aesthetically pleasing' does not just include a subjective element, it is completely dependent on a person's subjective opinion." *Id*. at 1350. Whether or not one is practicing the method step of "electronically specifying information identifying a plurality of parts and specifications for the parts" does not depend on "a person's subjective opinion."

Nor is "electronically specifying information identifying a plurality of parts and specifications for the parts" analogous to "comparing . . . characterizing information" found to have rendered the claims indefinite in *Union Pacific Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684 (Fed. Cir. 2001), another case that Hyundai relies on. In *Union Pacific*, it was not clear whether "comparing" was being used as a technical or scientific term to refer to a complex process of

"stretching and squeezing" a data log in a method related to drilling for oil and natural gas, or whether it was being used in a colloquial sense to mean "to examine in order to note the similarities or differences of." *Id*. at 692.  Hyundai posits no analogous question here.

"Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite." *Datamize*, 417 F.3d at 1347; *see also Marley Mouldings, Ltd. v. Mikron Indus.*, 417 F.3d 1356, 1361 (Fed. Cir. 2005)(when a claim "is not insolubly ambiguous, it is not invalid for indefiniteness"); *Bancorp Servs., L.L.C. v Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004) ("We have held that a claim is not indefinite merely because it poses a difficult issue of claim construction; if the claim is subject to construction, *i.e.*, it is not insolubly ambiguous, it is not invalid for indefiniteness."). "By finding claims indefinite only if reasonable efforts at claim construction prove futile, we accord respect to the statutory presumption of patent validity, see 35 U.S.C. § 282, and 'we protect the inventive contribution of patentees, even when the drafting of their patents has been less than ideal.' . . .  Thus, 'close questions of indefiniteness in litigation involving issued patents are properly resolved in favor of the patentee.'" *Bancorp*, 359 F.3d at 1372 (quoting *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375, 1380 (Fed. Cir. 2001)).   Also "[c]laim definiteness is analyzed 'not in a vacuum, but always in light of the teachings of the prior art and of the particular application disclosure as it would be interpreted by one possessing the ordinary level of skill in the pertinent art.' " *Energizer Holdings v. U.S. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) (quoting *In re Moore*, 439 F.2d 1232, 1235 (CCPA 1971)).

Here it is clear that in the context of the '627 patent, as well as claim 1, "information identifying a plurality of parts and specifications for the parts" is in an electronic form that permits practice of the claimed "computerized method of selling parts for particular equipment."  Indeed, that

29

is what the claim says, *i.e.*, "<u>electronically</u> specifying."

The Court concludes that one of ordinary skill in the art would understand that "electronically specifying information identifying a plurality of parts and specifications for the parts" means "information identifying a plurality of parts and specifications for the parts that is in an electronic form."

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above.  For ease of reference, the Court's claim interpretations are set forth in a table as Appendix B.  The claims with the disputed terms in bold are set forth in Appendix A.

**So ORDERED and SIGNED this 10th day of April, 2007.**

**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**

APPENDIX A

U.S. PATENT NO. 5,615,342

1. A computer assisted method of generating a **customized proposal** for selling products to particular customers, the method comprising the steps of:

> presenting to a **user** of the computer a **plurality of questions relating to features and uses of the products**;
>
> inputting into the computer a **plurality of customer answers to the questions, the answers specifying a customer's desired product features and uses**;
>
> storing in the computer **product pictures, product environment pictures** and text segments;
>
> **selecting a particular product picture in response to at least one of the customer answers;**
>
> **selecting a particular product environment picture in response to at least one of the customer answers;**
>
> **selecting a particular text segment in response to at least one of the customer answers**; and
>
> generating a **customized proposal** for the customer using the particular **product picture**, the particular **product environment picture** and the particular text segment.

11. A computer assisted method of generating a **customized proposal** for a customer to facilitate a sale of a product, the computer storing **product images, product environment images** and text segments, the method comprising the steps of:

> prompting a **user** of the computer with a **plurality of questions related to at least one of a desired feature and desired use of the product**;
>
> receiving into the computer **customer answers of the customer to the plurality of questions**;
>
> **automatically selecting, in response to at least one of the customer answers, a product image, a product environment image and a text segment**; and
>
> generating a proposal customized for the customer using the selected **product image**, the selected **product environment image** and the selected text segment.

U.S. PATENT NO. 5,367,627

1. A computerized method of selling parts for particular equipment specified by a customer, comprising the steps of:

> a) **receiving information identifying a customer's parts requirements for the equipment**, comprising the step of receiving equipment application information, comprising an identification of the equipment with which one or more parts are to be used;
>
> b) **electronically specifying information identifying a plurality of parts and specifications for the parts**;
>
> c) gathering parts-related information for one or more parts within the plurality of parts which meets the customer's requirements, comprising the step of electronically associating at least one of the parts within the plurality of parts with the received equipment application information; and
>
> d) receiving the gathered parts-related information and compiling the parts-related information into a proposal meeting the customer's requirements.

31

APPENDIX B

U.S. PATENT NO. 5,615,342

| # | Claim Term/Claim Language | Court's Construction |
|---|---|---|
| 1 | customized proposal [claims 1, 11]<br><br>[Claim 1] A computer assisted method of generating a **customized proposal** for selling products to particular customers, the method comprising the steps of:<br><br>[Claim 11] A computer assisted method of generating a **customized proposal** for a customer to facilitate a sale of a product, the computer storing product images, product environment images, and text segments, the method comprising the steps of: | "Proposal": Information intended for conveyance to a potential customer.<br><br>"Customized Proposal" – No need for construction; plain meaning. |
| 2 | questions [claims 1, 11]<br><br>[Claim 1] presenting to a user of the computer a plurality of **questions** relating to features and uses of the products;<br><br>[Claim 11] prompting a user of the computer with a plurality of **questions** related to at least one of a desired feature and desired use of the product; | No need for construction; plain meaning. |
| 3 | uses of the products [claims 1, 11]<br><br>[Claim 1] presenting to a user of the computer a plurality of questions relating to features and **uses of the products**;<br><br>[Claim 11] prompting a user of the computer with a plurality of questions related to at least one of a desired feature and desired **use of the product**; | No need for construction; plain meaning. |
| 4 | a plurality of questions relating to features and uses of the products [claims 1, 11]<br><br>[Claim 1] presenting to a user of the computer **a plurality of questions relating to features and uses of the products**;<br><br>[Claim 11] prompting a user of the computer with **a plurality of questions related to at least one of a desired feature and desired use of the product**; | No need for construction; plain meaning. |
| 5 | a plurality of customer answers to the questions, the answers specifying a customer's desired product features and uses [claim 1]<br><br>customer answers of the customer to the plurality of questions [claim 11]<br><br>[Claim 1] inputting into the computer **a plurality of customer answers to the questions, the answers specifying a customer's desired product features and uses**;<br><br>[Claim 11] receiving into the computer **customer answers of the customer to the plurality of questions**; | No need for construction; plain meaning. |

| # | Claim Term/Claim Language | Court's Construction |
|---|---------------------------|----------------------|
| 6 | product pictures [claim 1]<br>product images [claim 11]<br><br>[Claim 1] storing in the computer **product pictures**, product environment pictures and text segments;<br><br>[Claim 11] automatically selecting, in response to at least one of the customer answers, **a product image**, a product environment image and a text segment; | No need for construction; plain meaning. |
| 7 | product environment pictures [claim 1]<br><br>product environment images [claim 11]<br><br>[Claim 1] storing in the computer product pictures, **product environment pictures** and text segments;<br><br>[Claim 11] automatically selecting, in response to at least one of the customer answers, a product image, **a product environment image** and a text segment; | No need for construction; plain meaning. |
| 8 | [Claim 1] **selecting a particular product picture in response to at least one of the customer answers; selecting a particular product environment picture in response to at least one of the customer answers; selecting a particular text segment in response to at least one of the customer answers;**<br><br>[Claim 11] **automatically selecting, in response to at least one of the customer answers, a product image, a product environment image and a text segment;** | No need for construction; plain meaning. |
| 9 | user [claims 1, 11]<br><br>[Claim 1] presenting to a **user** of the computer a plurality of questions relating to features and uses of the products;<br><br>[Claim 11] prompting a **user** of the computer with a plurality of questions related to at least one of a desired feature and desired use of the product; | No need for construction; plain meaning. |

**U.S. PATENT NO. 5,367,627**

| # | Claim Term/Claim Language | Court's Construction |
|---|---------------------------|----------------------|
| 1. | [Claim 1] b) **electronically specifying information identifying a plurality of parts and specifications for the parts**; | information identifying a plurality of parts and specifications for the parts that is in an electronic form |
| 2. | **receiving information identifying a customer's parts requirements for the equipment** | No need for construction; plain meaning. |